IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-167-D

| | |
|---|---|
| ALBERT W. SECHRIST, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Albert Sechrist ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion [DE-26] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on September 7, 2010, alleging disability beginning March 20, 2010. (R. 14, 191-201). Both claims were denied initially and upon reconsideration. (R. 14, 56-57, 76-77). A video hearing before the

Administrative Law Judge ("ALJ") was held on June 25, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 28-54). On July 13, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-23). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 9), and submitted additional evidence as part of her request (R. 5, 399-424). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on May 13, 2013. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ improperly evaluated Plaintiff's impairments under

3

Listing 12.05C. Pl.'s Mem. [DE-23] at 7-11.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, depression, and borderline intellectual functioning. *Id.* The ALJ also found Claimant had a nonsevere impairment of carpal tunnel syndrome. (R. 17). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in his activities of daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation. (R. 17-18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] but is limited to performing simple, routine, and repetitive tasks and jobs which have a reading and math level equal to, or less than, the requirement of his past relevant work. (R. 19). In making this assessment, the ALJ found Claimant's statements about his

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

limitations not fully credible. (R. 19-21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an electrician's helper and industrial cleaner. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 47 years old and unemployed. (R. 32, 34). Claimant attained an eighth grade education, participating in the special education program throughout his tenure in school. (R. 32). Claimant currently is not married, but lives with his girlfriend and son. *Id.* Claimant was last employed as a laborer with an industrial plant manufacturing concrete pipe for approximately two years, where his duties included clean up and checking and wiping the pipes with brushes. (R. 34-35). Claimant's past work experience also includes work as an electrician's helper for approximately 15 years and various other jobs lasting no more than a few months. (R. 34, 36-38).

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. These medical conditions include wrist pain, back pain, lower leg pain, neck pain, and erratic blood pressure. Claimant also noted his educational problems. Claimant estimated he has experienced pain in both wrists for approximately one year and has been diagnosed with carpal tunnel syndrome. (R. 39). Claimant testified that he takes medication to control the pain and has received no other treatment, but is currently visiting the pain clinic for treatment. *Id.* Claimant has also experienced back pain since 2009 with his only treatment being medication and one session of physical therapy. (R. 40). Claimant has no surgeries scheduled for his back or wrists.

5

(R. 49). In addition, Claimant experiences lower leg pain and neck pain for which he takes medication. *Id.* Claimant does not make use of a cane or brace for these conditions. *Id.* Claimant's pain is constant, but his medication provides some relief and he sometimes sits in hot water to help ease his pain. (R. 41). Claimant indicated that he used a Tens Unit sometime in 2010, but that it did not help. (R. 47-48). Claimant testified that his pain medications make him feel "under the influence" and "loopy," which usually means that he stays in the house and does nothing when taking his medication. (R. 38, 41-42). Claimant's blood pressure also fluctuates between high and low on a regular basis, causing Claimant to have dizzy spells, and Claimant's heart races sometimes. (R. 40-41, 49).

When asked by the ALJ about the presence of any emotional problems, Claimant testified he could not think of any specific problems, although he does have difficulty staying on task. (R. 41). Claimant has a driver's license and testified he drives one to two times per week to go to the store or doctor's appointments. (R. 32). Claimant estimated that he can walk from the front of a Wal-Mart store to the side before having to take a break, but he must take walking breaks every five to 10 minutes. (R. 42). Claimant also testified he could stand for approximately five minutes, sit for 10 to 15 minutes, and lift about 10 pounds. (R. 42-43). Around the house, Claimant testified that the only thing he does is play with his one-year-old son and watch TV, with his wife doing all the household chores. (R. 43). Claimant will visit neighbors on his street and attend church once or twice each month. (R. 43-44).

Claimant also testified about his learning disability and repeating the eighth grade and another grade he cannot remember. (R. 44-45). Claimant stated that he did not attend school after 1980, but briefly attended a vocational rehabilitation center to improve his reading and math for

6

which he did not attain a certificate from the center. (R. 33, 45-46). Claimant recently underwent some learning tests in 2011. (R. 48).

C.   **Vocational Expert's Testimony at the Administrative Hearing**

Paula Day testified as a VE at the administrative hearing. (R. 50-52). After the VE's testimony regarding Claimant's past work experience (R. 50), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked what jobs the hypothetical individual could perform assuming the individual has the physical capacity to perform light work involving simple, routine and repetitive tasks with reading, reasoning, and math levels equal to or less than what was required at his past jobs. (R. 51). The VE responded that the jobs of laundry folder (DOT # 369.677-010), cafeteria attendant (DOT # 311.677-010), and motel cleaner (DOT # 323.687-014) would be available. *Id.* The ALJ next asked the VE to assume the same hypothetical individual, but with the ability to walk for five or 10 minutes, stand for five minutes, sit for 10 to 15 minutes, and lift 10 pounds, and asked what work was available for this individual. *Id.* The VE responded that these additional limitations would preclude all competitive work. (R. 52).

## V. DISCUSSION

**The ALJ's Listing 12.05C Analysis.**

Claimant contends that the ALJ erred at step three by failing to find that his impairments meet Listing 12.05C, the listing for mental retardation.[2] Pl.'s Mem. at 7-11. Specifically, Claimant appears to contend that the ALJ erred in finding he has no deficits in adaptive functioning,

---

[2] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listing of Impairments. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013). The terms are used interchangeably herein.

7

subsequently making the ALJ's discrediting of his IQ score erroneous. *Id.* at 8. The Commissioner contends that the ALJ's finding at step three is supported by substantial evidence. Def.'s Mem. [DE-25] at 7-10.

Claimant bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining whether a claimant meets the requirements for intellectual disability. *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 813 (E.D.N.C. 2009) (citing *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov.14, 2008)). To meet the requirements of Listing 12.05, a claimant's impairment must first satisfy the diagnostic description for intellectual disability. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. The diagnostic definition for intellectual disability consists of two requirements. "First, the claimant must demonstrate 'significantly subaverage general intellectual functioning.' Second, such subaverage intellectual functioning must be accompanied by 'deficits in adaptive functioning initially manifested during the developmental period,' that is, before the age of 22." *Mebane v. Colvin*, No. 2:13-CV-43-FL, 2014 WL 3510208, at *5 (E.D.N.C. July 15, 2014) (quoting § 12.05). "Adaptive functioning refers to how effectively an individual copes with common life demands and how well [he] meets the standards of personal independence expected of someone in [his] particular age group, sociocultural background, and community setting." *Richardson v. Colvin*, No. 8:12-CV-3507, 2014 WL 793069, at *14 (D.S.C. Feb. 25, 2014) (quotations omitted). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536

8

U.S. 304, 309 n.3 (2002)). Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of the disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

In this case, Claimant contends his impairments satisfy the intellectual disability listing under category C, which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function. *Id.* § 12.05C. Regarding IQ score requirements under the severity determination, "[a]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). If the score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation." *Powell v. Barnhart*, No. 6:04-CV-63, 2005 WL 1926613, at *4 (W.D. Va. Aug. 9, 2005). However, the ALJs' assessment of an IQ score must be supported by substantial evidence. *Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at *5 (E.D.N.C. Nov. 15, 2013) (memorandum and recommendation) (citing *Watson v. Astrue*, No. CBD-11-2491, 2013 WL 136425, at *3-4 (D. Md. Jan. 9, 2013)). The "significant work-related limitation" requirement is satisfied where the ALJ has found that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)").

Here, the ALJ found that Claimant did not meet Listing 12.05C on the following grounds:

Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant

9

> does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant had a full-scale IQ score of 67, the claimant's admitted daily activities suggest that he does not have serious deficits in adaptive functioning. Pursuant to *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012), an Administrative Law Judge has the discretion to assess the validity of an IQ test result, and is not required to accept it, even if it is the only such result in the record. The undersigned can reject such an IQ score when the score is inconsistent with other evidence of the claimant's actual functioning. In this case, the claimant is able to maintain a driver's license, play with his young son, shop, and perform housework. These activities show the claimant's daily functioning is inconsistent with his low IQ score. As such, the undersigned rejects the claimant's IQ score, and ultimately finds his intellectual deficits do not meet listing 12.05.

(R. 18). The ALJ also mentioned later in the opinion Claimant's enrollment in special education programs and examinations and reports by psychological consultants, including Dr. Burnett and Dr. Strobel-Nuss, essentially covering all material related to Claimant's mental capacity. (R. 20-21). In this case, the ALJ did not expressly go through the two-step analysis. However, it is clear that he considered the first "diagnostic" element of the inquiry although this discussion and evidence "is [largely] subsumed into an analysis of whether Claimant satisfied [the "severity"] requirement[ ] in the second step of the analysis." *Ragland v. Astrue*, No. 5:08-CV-152-D(2), 2009 WL 1904530, at *6 (E.D.N.C. July 1, 2009). In concluding Claimant did not meet Listing 12.05C, the ALJ determined that Claimant failed to satisfy the diagnostic criteria and the severity criteria of the analysis. (R. 17-19). Because both the diagnostic criteria and the category C criteria must be satisfied in order for Claimant's mental impairments to meet Listing 12.05C, if the ALJ's determination in either regard is supported by substantial evidence and not contrary to law, then his decision must be upheld. *See Hancock*, 667 F.3d at 474 (finding that the claimant can prevail only by establishing that the ALJ erred in his analysis of both the diagnostic criteria and the category C criteria).

10

Although the ALJ found Claimant to fail both the "diagnostic" and "severity" determinations included in Listing 12.05C, the court first turns its attention to whether the ALJ's finding that Claimant has not satisfied the diagnostic definition of intellectual disability is supported by substantial evidence. Despite Claimant's contention to the contrary, substantial evidence supports the ALJ's finding that Claimant does not meet the "diagnostic" criteria.

The crux of Claimant's argument is that the ALJ erroneously found Claimant did not satisfy the "diagnostic" criteria because the activities cited by the ALJ, specifically driving, shopping, performing housework, and playing with his son, are not inconsistent with activities of a mildly retarded individual and, therefore, this finding is not supported by substantial evidence. Pl.'s Mem. at 8. In support of Claimant's contention that he did in fact have deficits in adaptive functioning sufficient to satisfy Listing 12.05C, Claimant cites to his education history, noting his inability to read and write, poor math skills, repeating of the eighth grade and inability to successfully complete the eighth grade at age 16. *Id.* at 9-10. Claimant also relies on his inability to stay on task, unskilled work history, inability to fill out applications without assistance from his wife, and modifications in the administration of his driver's license test. *Id.* at 10. In addition to citing evidence supportive of Claimant's position, Claimant contends the evidence cited by the ALJ was improperly relied on and does not support his finding. The court recognizes that this evidence cited by Claimant supports the existence of deficits in adaptive functioning in the areas of "functional academic skills" and "self-direction." *See Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (struggling in special education classes, having trouble with reading, writing and math, and dropping out of school in the ninth grade constituted evidence of mental retardation prior to age 22). However, despite Claimant's educational record reflecting enrollment in special education classes, the ALJ appears to have

11

considered the evidence and weighed appropriate factors in analyzing whether Claimant met the diagnostic criteria and the court cannot find as a matter of law that his decision was not supported by substantial evidence or contrary to law. The balance of the record provides substantial evidence to support the ALJ's conclusion.

First, the ALJ expressly found at step two that Claimant has the severe impairment of borderline intellectual functioning, corroborating his finding that Claimant does not satisfy the first "diagnostic" element for intellectual disability. (R. 16); *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3732815, at *5 (E.D.N.C. July 6, 2012) (finding that the ALJ's determination that claimant did not satisfy the diagnostic criteria was lawful based upon the ALJ's supported finding of borderline intellectual functioning at step two), *adopted by* 2012 WL 3727317 (E.D.N.C. Aug. 28, 2012); *see also Weedon v. Astrue*, No. 0:11-2971-DCN, 2013 WL 1315311, at *5 (D.S.C. Jan. 31, 2013) ("[A] claimant's diagnosis . . . is pertinent: when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning . . . than if the claimant has a lesser diagnosis of borderline intellectual functioning.") (citing *Conyers v. Astrue*, No. 4:11-CV-37-D, 2012 WL 3282329, at *9 (E.D.N.C. June 29, 2012), *adopted by* 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012)). Borderline intellectual functioning involves a lesser degree of intellectual deficiency than mental retardation. *See Diagnostic and Statistical Manual of Mental Disorders*, 740 (4th ed., Text Revision 2000); *see also Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (noting contradiction between ALJ's finding that claimant did not satisfy diagnostic definition and his acceptance of the mild mental retardation diagnosis by two psychologists). Moreover, the March 2011 report of Disability Determination Services ("DDS") consulting psychologist Edmund Burnett, Ph.D., was summarized by the ALJ and

given great weight. (R. 20-21). IQ testing by Dr. Burnett indicated Claimant to have a full scale IQ of 67, a score within the mild mental retardation range, but with two of the four scoring areas falling in the borderline range. (R. 320-23). Claimant reported to Dr. Burnett that he lives with his wife and child, works in the yard and around the house, shops, pays bills, works on cars, has limited social interaction, and is able to drive. *Id.* Dr. Burnett noted Claimant's educational history, with an early drop-out from school, but ultimately diagnosed Claimant with "rule out borderline intellectual functioning," noting Claimant is able to understand simple tasks and instructions and is minimally impaired in his ability to maintain concentration over time. *Id.*; *see Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 768-69 (11th Cir. 2012) (noting that a diagnosis of borderline intellectual functioning is "mutually exclusive of mental retardation"). This opinion provides further support for the ALJ's finding that Claimant did not satisfy the diagnostic criteria.

Consulting DDS non-examining psychologist, Dr. Strobel-Nuss, gave great weight to Dr. Burnett's opinion in her Mental Residual Functional Capacity Assessment ("MRFC") dated March 23, 2011, and found Claimant capable of performing simple, routine, repetitive tasks. (R. 86-88). The MRFC also noted moderate limitations in only a few areas, finding no significant limitation in the majority of the assessment areas. *Id.* In her Psychiatric Review Technique form, also dated March 2011, Dr. Strobel-Nuss found in the "paragraph B" criteria that Claimant had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace, and after noting Claimant's daily activities, opined that his activities are not consistent with mental retardation. *Id.* Specifically, Dr. Strobel-Nuss noted that Claimant is able to read and write some, manage personal business matters, citing Claimant's ability to resolve an issue with his mail, and count money. (R. 84). The ALJ states in his decision

13

that he gave great weight to the opinions of Dr. Strobel-Nuss. (R. 21).

Also, in his discussion of Listing 12.05C, the ALJ noted certain activities, albeit contested by Claimant, which he found countered a finding of deficits in adaptive functioning. (R. 18). Those activities, appearing in the above paragraph cited from the ALJ's opinion, include maintaining a driver's license, playing with his child, shopping, and performing housework. Claimant contends the ALJ improperly weighed this evidence; however, the courts finds that these activities, when considered with the multiple diagnoses of borderline intellectual functioning by physicians and other daily activities cited in the various physician opinions, are appropriately considered despite the fact that many of these activities can likewise be consistent with mental retardation. *But see Radford v. Astrue,* No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (adopting magistrate judge recommendation finding that an individual's ability "to work, complete household chores, and raise a family is not inconsistent with mild mental retardation"). Additionally, Claimant's work history includes semi-skilled work as an electrician's helper, which Claimant testified he did for approximately 15 years. (R. 21, 37).

Because the ALJ appears to have considered pertinent evidence and weighed appropriate factors in analyzing whether Claimant met the diagnostic criteria, the court cannot say that his decision was not supported by substantial evidence or contrary to law. The fact that Claimant can point to other evidence that supports his position does not render the ALJ's decision unsupported. *See Hancock*, 667 F.3d at 476. Having determined the ALJ did not err in analyzing the diagnostic criteria, Claimant cannot prevail with his argument that the ALJ erred in finding he did not satisfy Listing 12.05C and the court need not address the sufficiency of the ALJ's finding as to the severity requirement.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 31st day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge